**SO ORDERED.**

**SIGNED this 15 day of April, 2013.**


_____
**J. Rich Leonard**
**United States Bankruptcy Judge**
_____


## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

**IN RE:**

| | |
|---|---|
| **TANGLEWOOD FARMS, INC. OF ELIZABETH CITY,** | **CASE NO. 10–06719–8–JRL** |
| | **CHAPTER 7** |
|     **DEBTOR.** | |

**JAMES B. ANGELL, CHAPTER 7 TRUSTEE,**

    **PLAINTIFF,**

        **v.**

**MONTAGUE FARMS, INC.,**

    **DEFENDANT.**

**ADVERSARY PROCEEDING NO. 12–00202–8–JRL**


## ORDER

This matter came before the court on the motion to dismiss this adversary proceeding for

failure to state a claim upon which relief can be granted, filed by Montague Farms, Inc.

("defendant"), which James B. Angell ("trustee") has opposed.  A hearing on the matter was held

on March 13, 2013 in Raleigh, North Carolina and at the conclusion of the hearing, the court

1

tentatively denied the defendant's motion to dismiss.

## BACKGROUND[1]

On August 20, 2010, Tanglewood Farms, Inc. of Elizabeth City ("debtor") filed a voluntary

petition seeking relief under chapter 11 of the Bankruptcy Code.   The debtor's case, however, was

subsequently converted to one under chapter 7 on July 12, 2011.   The trustee was appointed, by

order entered on July 12, 2011, to administer the case. The debtor, a granary facility in Pasquotank

County, North Carolina, was operated by its  president and sole shareholder, James Howard

Winslow ("Mr. Winslow").  In that capacity, Mr. Winslow oversaw the debtor's purchase, sale and

storage of corn, wheat and soybeans (collectively "grain") and facilitated grain exchange between

the debtor, Winslow Farms,[2] grain suppliers and purchasers.  The debtor purchased grain from

Winslow Farms and stored grain Winslow Farms sold to third parties at its granary facility.  Mr.

Winslow and his wife, Billie Reid Winslow (collectively "Winlsows"), however,  filed a joint

---

[1]These facts are a distillation of the allegations in the complaint, which is viewed in a
light most favorable to the trustee as the non–moving party. Mylan Labs., Inc. v. Matkari, 7 F.3d
1130, 1134 (4th Cir. 1993) ("In considering a motion to dismiss, the court should accept as true
all well–pleaded allegations and should view the complaint in a light most favorable to the
plaintiff. (citing De Sole v. United States, 947 F.2d 1169, 1171 (4th Cir. 1991)).

The court has set forth several detailed recitations of the relevant facts surrounding the
debtor and its fiscally irresponsible business operations prompting its bankruptcy filing in Angell
v. Meherrin Agricultural & Chemical Co. (In re Tanglewood Farms, Inc. of Elizabeth City), No.
12–00186–8–JRL 2013 WL 1405729 (Bankr. E.D.N.C. Apr. 8, 2013), Angell v. Endcom, Inc.
(In re Tanglewood Farms, Inc. of Elizabeth City), ___ B.R. ___, 2013 WL 692975 (Bankr.
E.D.N.C. Feb. 26, 2013), Angell v. Augusta Seed Corp. (In re Tanglewood Farms, Inc. of
Elizabeth City), No. 12–00193, 2013 WL 474704 (Bankr. E.D.N.C. Feb. 7, 2013), and In re
Tanglewood Farms, Inc. of Elizabeth City, No. 10–06719, 2011 WL 672060 (Bankr. E.D.N.C.
Feb. 18, 2011).  For purposes of clarity and for the benefit of the record, the court will reiterate
and supplement those facts where necessary.

[2]Winslow Farms was Mr. Winslow's personal farming operation, which supplied the
debtor with grain.

voluntary petition for relief under chapter 11 of the Bankruptcy Code on August 23, 2010.[3]

The debtor's schedules and statement of financial affairs, filed on September 3, 2010, reveal that the debtor had total liabilities of $38,290,562.04 compared to total assets of $2,954,363.65 on the petition date. Its statement of financial affairs, however, lists gross income of $20,470,302.00 in 2008, $3,000,000.00 in 2009 and $2,410,440.82 from January to August 2010.

The defendant is a specialty soybean grower, organized and existing under the laws of the State of Virginia. The defendant sells high quality soybeans for use and consumption worldwide. Between 2008 and 2009, the defendant purchased approximately $5,098,606.04 worth of soybeans from the debtor. The defendant remitted payments totaling $2,868,774.78 between October 2008 and June 2009 for grain it purchased in 2008. Among these was a payment of $401,238.39, by check dated November 10, 2008 and drawn on the defendant's account ("November 2008 payment"). This payment, however, was reduced by $170,183.20 owed to the defendant for seed it sold on account to Mr. Winslow and Winslow Farms. The debtor received, as a result, $231.055.19 of the November 2008 payment. Similarly, the defendant made payments of $2,199,831.26 between November 2009 and April 2010 for grain purchased from the debtor during 2009. On November 24, 2009, the defendant made a payment of $745,315.69, which was reduced by $80,076.40 to offset seed previously purchased by Mr. Winslow from the defendant and used by Winslow Farms ("November 2009 payment"). Both these payments were made by the defendant within the two–year period preceding the petition date. After withholding portions of both the

---

[3]The relationship between the debtor, Mr. Winslow and his personal farming operation was so intertwined and close that many, including suppliers and purchasers, identified them as one entity. Despite this tripartite relationship, this court denied the motion consolidate the Winslows' individual case with the debtor's case on February 18, 2011. See Tanglewood Farms, 2011 WL 672060, at *1–2 (Bankr. E.D.N.C. Feb. 18, 2011).

payments to offset the outstanding accounts payable for seed purchased and used by Winslow

Farms, the debtor only received $231,055.19 of the November 2008 payment and $663,239.29 of

the November 2009 payment.

The complaint initiating this adversary proceeding was filed by the trustee on August 20,

2012, against the defendant seeking avoidance and recovery of $250,259.60 withheld from the

November 2008 payment and November 2009 payment, as constructively fraudulent transfers

pursuant to §§ 544, 548, 550 and 551 of the Bankruptcy Code and the North Carolina Uniform

Fraudulent Transfer Act, N.C. Gen. Stat. § 39–23.1 et seq.  After receiving several extensions of

time to answer or otherwise respond, the defendant filed the motion to dismiss and supporting

memorandum of law currently before the court on January 11, 2013.  The trustee filed a response

and memorandum of law opposing the defendant's motion to dismiss on February 1, 2013.

### STANDARD OF REVIEW

Every pleading must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008.  To comply with

Fed. R. Civ. P. 8(a)(2) and survive a motion to dismiss, a complaint must include "sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,

556 U.S. 662, 677–78 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007));

Angell v. Ber Care, Inc. (In re Caremerica, Inc.), 409 B.R. 737, 745 (Bankr. E.D.N.C. 2009). There

are two working principles the form the basis of the heightened pleading standard announced in

Twombly and Iqbal:

> First, the tenant that the court must accept as true all of the allegations contained in
> a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements
> of a cause of action, supported by mere conclusory statements, do not suffice . . . .
> Second, only a complaint that states a plausible claim for relief survives a motion to

dismiss.

Ber Care, 409 B.R. at 747 (quoting Iqbal, 556 U.S. at 678); accord Twombly, 550 U.S. at 570.

(emphasizing that a pleading providing "labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." (citation omitted)).  "[W]here the well–pleaded facts do

not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 677–78.

"Claim[s] ha[ve] facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  ("The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility

of entitlement to relief.'" (internal citations and brackets omitted)).

### DISCUSSION

The defendant, in its motion to dismiss, asserts that this adversary proceeding should be

dismissed for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P.

12(b)(6) and Fed. R. Bankr. P. 7012 because the complaint fails to plead facts demonstrating, with

sufficient plausibility, that the two transfers alleged to be constructively fraudulent were transfers

of an interest of the debtor.  According to the defendant, the complaint and all allegations therein

also fail to give rise to the plausible belief that the debtor was either insolvent, engaged in a

transaction for which its remaining property was an unreasonably small capital or intended to incur

debts that would be beyond its ability to pay.[4]

Section 548 of title 11 permits the trustee to avoid, as actually or constructively fraudulent, any transfer of a debtor's interest in property within two years of the petition date, provided the debtor "received less than reasonably equivalent value in exchange for such transfer" and either:

(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1); Angell v. Haveri (In re Caremerica, Inc.), 409 B.R. 346, 352 (Bankr. E.D.N.C. 2009) ("[A] transfer is avoidable if it was either actually fraudulent in that it '(i) had at its purpose an intent to hinder, delay or defraud the debtor's creditors,' or that it was constructively fraudulent in that it '(ii) was made while the debtor was in a precarious financial condition, and the transaction did not provide the debtor with a reasonably equivalent value in exchange for the item transferred.'" (quoting 5 Collier on Bankruptcy ¶ 548.01 (Alan N. Resnick & Henry J. Sommer,

---

[4]For purposes of the motion to dismiss and based on this court's decisions in Endcom and Augusta Seed, the defendant abandoned its contention that the complaint failed to establish the debtor's insolvency on the dates of the two transfers challenged by the trustee. The defendant, however, mischaracterizes the effect of these decisions. For reasons stated in Meherrin Agricultural & Chemical, 2013 WL 1405729, at *6-7, and to maintain consistency among all the associated adversary proceedings in the debtor's underlying bankruptcy case, the court will address whether the allegations in the complaint support a plausible belief of the debtor's insolvency on the dates of the challenged transfers.

eds., 15th ed. rev.)).  Actions to set aside a transfer as constructively fraudulent "rely on the debtor's financial condition and the sufficiency of the consideration provided by the transferee." Haveri, 409 B.R. at 353 (citing In re Derivium Capital, LLC, 380 B.R. 429, 439 (Bankr. D.S.C. 2006)).  Section 550 of the Bankruptcy Code governs the liability of a transferee of a  transfer avoided pursuant to § 548. 11 U.S.C. § 550(a) (allowing recovery of an avoided transfer from the initial transferee or from an immediate or mediate transferee of the initial transferee).

To avoid a transfer as constructively fraudulent under § 548(a)(1)(B), the trustee must show, as a threshold matter, that there was a "transfer . . .  of an interest of the debtor in property . . . ." 11 U.S.C. § 548(a)(1)(B).  A "transfer" is "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D).  The legislative history surrounding the definition of "transfer" suggests that Congress intended it to be expansive, stating that the definition included "any . . . transfer of possession, custody or control even if there is no transfer of title . . . ." S. Rep. No. 95–989, at 27 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5813; H.R. Rep. No. 95–595, at 314 (1977), reprinted in 1978 U.S.C.C.A.N. 5963.  Transfers "do[] not have to be made directly by a debtor in order to fall within the ambit of the statute." Camel v. River Bank Am. (In re FBN Food Servs., Inc.), 185 B.R. 265, 272 (N.D. Ill. 1995) (holding that transactions where the debtor released its rights against a franchisor and the franchisor's $1,400,000.00 payment to the parent corporation of one of the debtor's shareholders fell within the broad definition of a "transfer" (citations and quotation marks omitted)).  The Bankruptcy Code, however, does not define the phrase an "interest of the debtor in property." See Begier v. IRS, 496 U.S. 53, 58, 110 S. Ct. 2258, 110 L. Ed. 2d 46 (1990) (holding that property of the debtor, as it applies to avoidance actions, is to be construed as property of the

estate within the meaning of § 541 of the Bankruptcy Code); but see Besing v. Hawthorne (In re Besing), 981 F.2d 1488, 1493 (5th Cir. 1993) ("An interest in property, for purposes of § 548, includes any interest of the debtor that would have been preserved for the benefit of the bankruptcy estate but for the alleged transfer." (citing In re Stevens, 112 B.R. 175, 177 (Bankr. S.D. Tex. 1989)).

Withholding a portion of funds owed to a debtor is an indirect and involuntary disposition of its property. See Off. Comm. of Unsecured Creditors v. Lozinski (In re High Strength Steel, Inc.), 269 B.R. 560, 567–68 (Bankr. D. Del. 2001) (concluding, based on "[d]efining 'transfer' broadly . . . a reconciliation may constitute a transfer of a debtor's interest in property.").[5]  Therefore, a "transfer" occurs, for purposes of § 101(54)(D) and § 548, when funds owed to the debtor or a portion thereof are involuntarily retained by a third–party.

With respect to the defendant's first contention for dismissal, the court finds that the trustee has plausibly alleged that the portion of the November 2008 and November 2009 payments withheld by the defendant constituted transfers of the debtor's interest in property.  The amounts withheld, according to the complaint, were applied to the outstanding obligations Mr. Winslow owed to the defendant for seed he previously purchased on account.  To satisfy these obligations, the proceeds realized by the debtor from the sale of its grain to the defendant were depleted by $250,259.60. This involuntary retention of portions from the November 2008 and November 2009 payments by the defendant constituted transfers because the proceeds the debtor realized from the sale of its grain

---

[5]"A  reconciliation is defined as 'an adjustment of accounts so that they agree, particularly where there are outstanding items.' Black's Law Dictionary 1278 (1999).  Adjusting the accounts could directly or indirectly dispose of a property interest particularly where the adjustment effects a setoff or recoupment."Lozinski, 269 B.R. at 567–68.

to the defendant were depleted by $250,259.60.    Accordingly, these allegations plausibly demonstrate that there was a transfer of the debtor's interest in the proceeds from the sale of grain by the defendant, which was effectuated by retaining portions of its November 2008 and November 2009 payments to satisfy the obligations owed by another, Mr. Winslow.

The Bankruptcy Code defines "insolvency" as the "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . . ." 11 U.S.C. § 101(32)(A).  To determine a debtor's insolvency, courts in the Fourth Circuit apply the "balance sheet test" which requires accessing "whether the debtor was insolvent when the transfer was made . . . comparing . . . the fair market value of the debtor's assets at the time of the transaction with the debtor's liabilities on the same date." Matson v. Strickland (In re Strickland), 230 B.R. 276, 281 (Bankr. E.D. Va. 1999) (citation omitted); Augusta Seed, 2013 WL 474704, at *3.

This court, in associated adversary proceedings commenced in this debtor's case, has utilized the debtor's egregious insolvency as of the petition date in determining the plausibility of whether the debtor was insolvent on the dates of earlier transfers. Meherrin Agric. & Chem, 2013 WL 1405729, at *6-7; Augusta Seed, 2013 WL 474704, at *3 (stating that a debtor's schedules, filed at the petition date, are taken into consideration when "determining the plausibility of a debtor's insolvency at the time of earlier transfers." (citation omitted)); Angell v. First Eastern, LLC (In re Caremerica, Inc.), No. 08–00157, 2011 WL 1457223, at *3 (Bankr. E.D.N.C. Apr. 15, 2011); cf. Oliver v. Cooper (In re Bateman), No. 11–00387, 2012 WL 1110080, at *2–3 (Bankr. E.D.N.C. Apr. 2, 2012) (refusing to allow the debtor's minuscule insolvency on the petition date (total liabilities exceeded total assets by approximately $60,000.00) to demonstrate the plausibility that the debtor was insolvent on two years earlier on the date of transfer ) (hereinafter "Cooper I"); Oliver v. Cooper

(In re Bateman), No. 11–00387, 2012 WL 3061181, at *3 (Bankr. E.D.N.C. July 26, 2012) (hereinafter "Cooper II").

      With respect to insolvency, the complaint alleges that the debtor was insolvent on the date of both the November 2008 and November 2009 payments.  Because insolvency is measured at the time the transfer occurred, the trustee must plead facts sufficient to give rise to the plausible belief that the debtor was insolvent on November 10, 2008 and November 24, 2009.  Similar to his complaint in Meherrin Agricultural & Chemical, the trustee relies solely on the debtor's schedules and statements, filed on September 3, 2010, to support this allegation.  In accordance with Meherrin Agricultural & Chemical, the egregious nature of the debtor's insolvency on the petition date is insufficient to plausibly demonstrate its insolvency with respect to transfers made prior to 2009. 2013 WL 1405729, at *7; accord Augusta Seed, 2013 WL 474704, at *3 (holding that, for purposes of a motion to dismiss, the debtor's insolvency on the petition date could plausibly predate to transfers taking placing within the preceding two years); First Eastern, 2011 WL 1457223, at *3 (finding that transfers made approximately seven months prior to the petition date were made while the debtor was insolvent, based on its schedules that listed total assets of $9,842.69 compared to total liabilities of $4,686,715.94 and claims of $15,823,184.00).  Based on this analytical framework and the record in the instant case, the court finds that the debtor's insolvency on the petition date is sufficient to demonstrate, with plausibility, a claim for avoidance of the $80,076.40 of the November 2009 payment retained by the defendant as a constructively fraudulent transfer.  The court will not infer that this insolvency predated to transfers made prior to 2009 and in the absence of any facts to support the debtor's insolvency prior to 2009,  the complaint has failed to nudge a claim that the $170,183.20 withheld from the November 2008 payment is avoidable as a constructively fraudulent

transfer "across the line from conceivable to plausible[,]" <u>Iqbal</u>, 556 U.S. at 680; <u>Twombly</u>, 550 U.S. at 570; therefore, it must be dismissed.

## CONCLUSION

Based on the foregoing, the defendant's motion to dismiss the trustee's claim seeking avoidance and recovery of portion of the November 2009 payment withheld by the defendant as a constructively fraudulent transfer under 548(a)(1)(B) is **DENIED.** Without retreating from its prior ruling at the conclusion of the hearing on this matter and to maintain consistency among all of the associated adversary proceedings in this case, the defendant's motion to dismiss with respect to the trustee's claim seeking to avoid and recover the $170,183.20 withheld from the November 2008 payment as constructively fraudulent is **ALLOWED.**

## END OF DOCUMENT