**SO ORDERED.**

**SIGNED this 23 day of May, 2014.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

IN RE:

| | |
|---|---|
| TANGLEWOOD FARMS, INC., OF ELIZABETH CITY | CHAPTER 7<br>CASE NUMBER: 10-06719-8-RDD |
| DEBTOR | |

| | |
|---|---|
| JAMES B. ANGELL, TRUSTEE,<br><br>PLAINTIFF,<br><br>v.<br><br>MONTAGUE FARMS, INC.,<br><br>DEFENDANTS. | ADVERSARY PROCEEDING<br>NUMBER: 12-00202-8-RDD |

**ORDER**

Pending before the Court is the Motion to Dismiss filed by Montague Farms, Inc. ("Montague") on November 12, 2013, the motion for summary judgment and memorandum of law in support of motion for summary judgment filed by Montague on January 7, 2014, and the response to Montague's motion for summary judgment filed by the Chapter 7 Trustee (the "Trustee") on January 28, 2014. The Court conducted a hearing in Greenville, North Carolina on April 2, 2014,

to consider these matters. Federal Rule of Civil Procedure 12(d) provides "[i]f, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." F.R.C.P. 12(d). In making its determination on Montague's motion to dismiss, the Court considered matters outside of the pleadings. Accordingly, the Court considers Montague's motion to dismiss as one for summary judgment.

## STATEMENT OF THE FACTS[1]

On August 20, 2010, Tanglewood Farms, Inc. of Elizabeth City (the "Debtor") filed a petition for relief under chapter 11 of the Bankruptcy Code. On July 12, 2011, the Debtor's case was converted to one under chapter 7 and the Trustee was appointed. The Debtor, a granary facility in Pasquotank County, North Carolina, was operated by its president and sole shareholder, James Howard Winslow ("Mr. Winslow"). In that capacity, Mr. Winslow oversaw the Debtor's purchase,

---

[1]These facts are set forth in the order denying in part and allowing in part Montague's motion to dismiss entered on April 15, 2013. In addition, these facts are a distillation of the allegations in the complaint, which is viewed in a light most favorable to the trustee as the non–moving party. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993) ("In considering a motion to dismiss, the court should accept as true all well–pleaded allegations and should view the complaint in a light most favorable to the plaintiff. (citing De Sole v. United States, 947 F.2d 1169, 1171 (4th Cir. 1991)).

The court has set forth several detailed recitations of the relevant facts surrounding the debtor and its fiscally irresponsible business operations prompting its bankruptcy filing in Angell v. Meherrin Agricultural & Chemical Co. (In re Tanglewood Farms, Inc. of Elizabeth City), No. 12–00186–8–JRL, 2013 WL 1405729 (Bankr. E.D.N.C. Apr. 8, 2013), Angell v. Endcom, Inc. (In re Tanglewood Farms, Inc. of Elizabeth City), 487 B.R. 705, 2013 WL 692975 (Bankr. E.D.N.C. Feb. 26, 2013), Angell v. Augusta Seed Corp. (In re Tanglewood Farms, Inc. of Elizabeth City), No. 12–00193, 2013 WL 474704 (Bankr. E.D.N.C. Feb. 7, 2013), and In re Tanglewood Farms, Inc. of Elizabeth City, No. 10–06719, 2011 WL 672060 (Bankr. E.D.N.C. Feb. 18, 2011). For purposes of clarity and for the benefit of the record, the court will reiterate and supplement those facts where necessary.

sale and storage of corn, wheat and soybeans (collectively "grain") and facilitated grain exchange between the Debtor, Winslow Farms[2], grain suppliers and purchasers. The Debtor purchased grain from Winslow Farms and stored grain Winslow Farms sold to third parties at its granary facility. Mr. Winslow and his wife, Billie Reid Winslow (collectively the "Winlsows"), filed a joint voluntary petition for relief under chapter 11 of the Bankruptcy Code on August 23, 2010[3].

The Debtor's schedules and statement of financial affairs, filed on September 3, 2010, reveal that the Debtor had total liabilities of $38,290,562.04 compared to total assets of $2,954,363.65 on the petition date. Its statement of financial affairs, however, lists gross income of $20,470,302.00 in 2008, $3,000,000.00 in 2009 and $2,410,440.82 from January to August 2010.

Montague is a specialty soybean grower, organized and existing under the laws of the State of Virginia. Montague sells high quality soybeans for use and consumption worldwide. In 2008 and 2009, Montague entered into two written contracts with Mr. Winslow to grow soybean seeds. Montague drafted both contracts. O. Bryan Taliaferro is a vice president with Montague. Both contracts refer to the farmer as "Grower." The 2008 contract was signed by Montague's vice president, O. Bryan Taliaferro, on behalf of "MF" and Mr. Winslow. The 2008 contract sets forth Mr. Winslow's obligation to purchase the seed and states "[s]eed is to be purchased after the date of this Agreement from [Montague] or its authorized Dealer. Terms of purchase shall be specified

---

[2]Winslow Farms was Mr. Winslow's personal farming operation, which supplied the debtor with grain.

[3]The relationship between the Debtor, Mr. Winslow and his personal farming operation was so intertwined and close that many, including suppliers and purchasers, identified them as one entity. Despite this tripartite relationship, this court denied the motion to consolidate the Winslows' individual case with the Debtor's case on February 18, 2011. See Tanglewood Farms, 2011 WL 672060, at *1–2 (Bankr. E.D.N.C. Feb. 18, 2011).

3

on 'Seed Order Form'". The 2009 contract was signed by John Thomson on behalf of "Montague Farms, Inc." and Mr. Winslow. The 2009 contract provides "[s]eed is to be purchased after the date of this contract given below from MFI. Terms of purchase shall be as described on the 'Seed Order Form.' MFI agrees to deliver such seed at a time and to location reasonably specified by Grower." Both contracts provide that "Grower agrees to plant all seed obtained under this contract and to prevent transfer of such soybeans or seed to another party without consent of Montague."

Between 2008 and 2009, Montague purchased approximately $5,098,606.04 worth of soybeans from the Debtor. Montague remitted payments totaling $2,868,774.78 between October 2008 and June 2009 for grain it purchased in 2008. Among these was a payment of $401,238.39, by check dated November 10, 2008 and drawn on Montague's account ("November 2008 payment"). This payment, however, was reduced by $170,183.20 owed to Montague for seed it sold on account to Mr. Winslow and Winslow Farms. The Debtor received, as a result, $231,055.19 of the November 2008 payment. Similarly, Montague made payments of $2,199,831.26 between November 2009 and April 2010 for grain purchased from the Debtor during 2009. On November 24, 2009, Montague made a payment of $745,315.69, which was reduced by $80,076.40 to offset seed previously purchased by Mr. Winslow from Montague and used by Winslow Farms ("November 2009 payment"). Both these payments were made by Montague within the two–year period preceding the petition date. After withholding portions of both the payments to offset the outstanding accounts payable for seed purchased and used by Winslow Farms, the Debtor only received $231,055.19 of the November 2008 payment and $663,239.29 of the November 2009 payment.

4

On August 20, 2012, the Trustee filed the complaint initiating this adversary proceeding seeking avoidance and recovery of $250,259.60 withheld from the November 2008 payment and November 2009 payment, as constructively fraudulent transfers pursuant to §§ 544, 548, 550 and 551 of the Bankruptcy Code and the North Carolina Uniform Fraudulent Transfer Act, N.C. Gen. Stat. § 39–23.1 et seq.

Montague filed a motion to dismiss for failure to state a claim upon which relief can be granted. On April 15, 2013, after a hearing on the motion to dismiss, Judge J. Rich Leonard entered an order denying in part and allowing in part the motion to dismiss. Judge Leonard found that the Trustee met the pleading requirements with respect to the transfer that occurred in November 2009. With respect to the transfer that occurred in November 2008, Judge Leonard found that the allegations contained in the complaint were insufficient to plead insolvency. In his order, Judge Leonard did not address the Trustee's request for leave to amend. The Trustee renewed his request for leave to amend the complaint. On October 23, 2013, Judge A. Thomas Small entered an order granting theTrustee's motion for leave to amend the complaint and finding that the proposed amendments were not clearly insufficient or frivolous on their face as to render the amendments futile. On October 24, 2013, the Trustee filed an amended complaint against Montague. Montague filed its motion to dismiss the amended complaint and answer to the amended complaint on November 12, 2013. On January 7, 2014, Montague filed a motion for summary judgment asserting no genuine issues of material fact exist that preclude judgment being entered in favor of Montague. The Trustee filed a response to Montague's motion for summary judgment on January 28, 2014. On January 7, 2014, the Trustee filed a motion for summary judgment asserting no genuine issue of material fact exist that preclude avoidance and recovery of the transfers from the defendant in the

5

amount of $250,259.60. Montague filed a response to the Trustee's motion for summary judgment on January 28, 2014. The Trustee's motion for summary judgment and response thereto are scheduled to be heard by the Court on June 19, 2014 in Greenville, North Carolina.

## DISCUSSION

"[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations omitted). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). If there is no genuine issue of material fact, and the issue to be decided is a matter of law, a ruling on a motion for summary judgment is appropriate.

Section 548 of title 11 permits the trustee to avoid, as actually or constructively fraudulent, any transfer of a debtor's interest in property within two years of the petition date, provided the debtor "received less than reasonably equivalent value in exchange for such transfer" and either:

> (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1); *Angell v. Haveri* (*In re Caremerica, Inc.*), 409 B.R. 346, 352 (Bankr. E.D.N.C. 2009) ("[A] transfer is avoidable if it was either actually fraudulent in that it '(i) had at its

purpose an intent to hinder, delay or defraud the debtor's creditors,' or that it was constructively fraudulent in that it '(ii) was made while the debtor was in a precarious financial condition, and the transaction did not provide the debtor with a reasonably equivalent value in exchange for the item transferred.'" (quoting 5 Collier on Bankruptcy ¶ 548.01 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.)). Actions to set aside a transfer as constructively fraudulent "rely on the debtor's financial condition and the sufficiency of the consideration provided by the transferee." *Haveri*, 409 B.R. at 353 (citing *In re Derivium Capital, LLC*, 380 B.R. 429, 439 (Bankr. D.S.C. 2006)).

"Adequate pleadings under § 548(a)(1)(B) include a list of the alleged fraudulent transfers, identification of the consideration received by the transferee, and information concerning why the consideration was not equivalent in value." *Angell v. Endcom, Inc.*(*In re Tanglewood Farms, Inc. of Elizabeth City*) 487 B.R. 705, 711 (Bankr. E.D.N.C. Feb. 26, 2013) (citing *Barth*, 2011 WL 1048848, at *3; *Ber Care*, 409 B.R. at 756.) The movant must prove by a preponderance of the evidence, that the debtor did not receive reasonably equivalent value in exchange for the challenged transfer and the debtor was insolvent. *Endcom*,487 B.R. 705, 709 (citing 11 U.S.C. § 548(a)(1)(B)). When assessing reasonably equivalent value "[t]he focus is on the consideration received by the debtor, not on the value given by the transferee. The purpose of fraudulent transfer law is the preservation of the debtor's estate for the benefit of its unsecured creditors." *Harman v. First Am. Bank of Md.* (*In re Jeffery Bigelow Design Grp., Inc.*), 956 F.2d 479 (4th Cir. 1992). "A large or significant disparity between what the debtor gave and what it received in exchange typically precludes a finding that the debtor received reasonably equivalent value." *Angell v. Endcom, Inc.*(*In re Tanglewood Farms, Inc. of Elizabeth City*) 487 B.R. 705, 710 (Bankr. E.D.N.C. Feb. 26, 2013) (citing 5 Collier on Bankruptcy ¶ 548.05[2][a],[b] (Alan N. Resnick & Henry J. Sommer eds., 16th

ed. rev. 2012) ("Courts generally find a lack of reasonably equivalent value when the transfer or obligations benefits a third party . . . . hold[ing] that such transfers provide no value to the debtor.").

The Trustee contends the Debtor did not receive reasonably equivalent value in exchange for the 2008 transfer and the 2009 transfer because the Debtor paid for an obligation belonging to Mr. Winslow, and that the Debtor was insolvent at the time of the transfers. To support this argument, the Trustee contends that although Mr. Winslow was obligated to Montague under the 2008 and 2009 contracts, Mr. Winslow failed to make any payments to Montague for seed, nor did Montague attempt to collect any money from Mr. Winslow. Instead, the Trustee asserts that Montague charged the Debtor for the seed when it withheld the transfers from the Debtor's grain proceeds. The Trustee also notes that the Debtor paid Mr. Winslow for the beans when Mr. Winslow transferred the beans to the Debtor. The contracts were drafted by Montague and signed by Mr. Winslow individually, not on behalf of the Debtor. The contracts provide "[t]erms of purchase shall be as described on 'Seed Order Form.'" It is not clear whether the Seed Order Form identifies the Debtor as a responsible party to the transaction. This lack of clarity creates a genuine issue of material fact.

In response, Montague contends the Trustee is unable to prove the "less then reasonably equivalent value" element of a claim under 11 U.S.C. § 548(a)(1). Montague asserts the soybean seeds were not delivered to or for the benefit of an entity other than the Debtor, nor in satisfaction of Mr. Winslow. Montague relies on the affidavit of Mr. Taliaferro which avers that at all times, it was Montague's understanding that Mr. Winslow was signing the contracts on behalf of the Debtor and that the Debtor was the purchaser of the soybean seed and the seller of the soybeans. Montague contends the Debtor received more than reasonably equivalent value as the Debtor

8

received a premium in connection with soybean sales in both years. Montague contends in year 2008, the Debtor received a total premium in the amount of $608,867.89. In farming year 2009, the Debtor received a total premium in the amount of $418,178.78. Although, it appears the Debtor was still short $250,259.20 from what the Debtor should have received, Montague argues that even if the Court assumes the Trustee is correct in that Mr. Winslow was obligated on the contracts to Montague, then the Debtor actually received a "windfall" because the Debtor would have received payment for proprietary soybeans when such payments by contract should have been given to Mr. Winslow, individually. Further, the Debtor was paid a premium for the soybeans, which it would not have received as it would have belonged to Mr. Winslow pursuant to the contract. While Montague acknowledges the Trustee faces his biggest hurdle in connection with proving the "less than reasonably equivalent value" element, Montague does not concede the Trustee can prove the other elements.

The Trustee has alleged that the Debtor could not pay debts in a timely manner in 2008. Even though the Debtor's income was considerably higher in 2008 ($20,420,302.00) than in 2009 ($3,000,000.00), the Court finds there is a genuine issue of material fact as to the Debtor's insolvency on November 10, 2008.

## **CONCLUSION**

Based on the evidence, the Court finds there is a genuine issue of material fact with respect to whether the Debtor received less than a reasonably equivalent value for the transfers at issue, and

as to whether the Debtor was insolvent as of the date of the 2008 transfer. Accordingly, Montague's motion for summary judgment is **DENIED**.

    **SO ORDERED.**

**END OF DOCUMENT**